*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CASPER/WASHINGTON, Minors.

UNPUBLISHED
June 9, 2022

No. 359270
Kent Circuit Court
Family Division
LC Nos. 21-050540-NA
21-050541-NA
21-050544-NA

Before: BORRELLO, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's orders terminating his parental rights to three of his children: GC, GTC, and INW, under MCL 712A.19b(3)(b)(*i*) and MCL 712A.19b(j). The trial court took jurisdiction over the children and terminated respondent's parental rights after it found that he had committed acts of sexual abuse against INW. On appeal, respondent argues that the trial court clearly erred when it found that the Department of Health and Human Services established by clear and convincing evidence grounds to terminate his parental rights to all three children. More specifically, he argues that the trial court could not properly proceed to termination without making the requisite findings that he subjected INW to aggravated circumstances. He also argues that the trial court erred when it found that termination of his parental rights was in the best interests of the children. Finally, he argues that the trial court erred when it denied his motion for reconsideration or a new trial premised on the claim that he did not receive effective assistance of counsel. Because respondent has not established any grounds for relief, we affirm.

## I. TERMINATION AT INITIAL DISPOSITION

### A. PRESERVATION AND STANDARD OF REVIEW

Respondent first argues that the trial court erred when it ordered the termination of his parental rights at the initial disposition without making the required finding of aggravated circumstances. He also maintains that the trial court clearly erred when it found that the Department established grounds for termination.

To preserve an issue for appellate review, the issue must have been raised in the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Respondent did not argue in the trial court that the trial court had to make a specific finding that a particular aggravating circumstance existed and that the specific circumstance excepted the Department from having to make reasonable efforts to reunify respondent with the children. He also did not argue before the trial court that it had to find that he engaged in sexual penetration or attempted to engage in sexual penetration with INW to justify termination at the initial disposition. Finally, he did not argue that the trial court's failure to follow the statutory procedures governing the duty to make reasonable efforts amounted to a constitutional violation. Therefore, these claims of error are unpreserved. See *id*. Respondent, however, did not have to take any special steps to preserve a claim that the trial court clearly erred when it found that the Department established one or more grounds for terminating his parental rights. See *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018).

This Court reviews de novo whether the trial court properly interpreted and applied relevant statutes. See *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). This Court, however, reviews the trial court's factual findings underlying its application of the law for clear error. *Id*. at 430; see also MCR 3.977(K). A finding is clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. *In re Gonzales/Martinez*, 310 Mich App at 430-431. To the extent that respondent failed to properly preserve an issue for appellate review, this Court reviews that claim for plain error affecting substantial rights. *In re Utrera*, 281 Mich App at 8. To establish a plan error that warrants relief, respondent must show that the trial court made a plain error that affected the outcome of the proceedings. *Id*. at 9. He must also establish that he was actually innocent or that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of his innocence. *Id*.

B. ANALYSIS

Respondent argues that the trial court had to order the Department to make reasonable efforts to reunify him with the children unless it specifically found that a particular aggravating circumstance existed that excepted the Department from that requirement. The Legislature provided that, under certain circumstances, the Department must petition to terminate a parent's parental rights and must request termination at the initial disposition. See MCL 722.638(1) and (2). In relevant part, the Department must file a petition if the Department "determines that a parent, guardian, or custodian, or a person who is 18 years of age or older who resides for any length of time in the child's home, has abused the child or a sibling of the child," and the abuse included, in relevant part, "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." MCL 722.638(1)(a)(*ii*). The Department must also file a petition if the Department determines that there is a risk of harm, child abuse, or child neglect; the parent's rights to another child were terminated; and the parent has failed to rectify the conditions that led to the termination. See MCL 722.638(1)(b)(*i*). If the Department is required to file a petition under MCL 722.638(1), and the Department suspects that the parent is the perpetrator or is suspected of placing the child at unreasonable risk of harm due to the failure to take reasonable steps to intervene to eliminate the risk of harm, the Department must request termination at the initial disposition. See MCL 722.638(2).

The requirements stated under MCL 722.638 involve duties imposed on the Department, not the trial court. Consistent with the requirements of MCL 722.638(1) and (2), the Department

petitioned the trial court to take jurisdiction over all three children and asked the trial court to terminate respondent's rights at the initial disposition. The Department specifically alleged that respondent sexually abused INW on multiple occasions, and, at the conclusion of its petition, it requested that the trial court immediately terminate respondent's rights to INW. The Department also alleged that respondent's rights to a different child—IH—had previously been terminated and identified the concerns that led to that termination. The Department similarly requested that the trial court terminate respondent's parental rights to GC and GTC at the initial disposition.

It is evident from the allegations and the request for relief that the Department determined that it was required to petition the court to take jurisdiction over the children and was required to seek termination at the initial disposition. Stated another way, it is plain on the face of the petition that the Department felt that MCL 722.638 applied to the facts of this case. It is also clear from the litigation that the parties understood that the Department proceeded on the belief that termination was warranted at the initial disposition—for the most part—on the ground of sexual abuse. At the adjudication trial, the parties primarily contested whether the evidence showed that respondent had in fact sexually assaulted INW. The trial court found INW credible and specifically stated that the Department proved the allegations of sexual abuse stated in the petitions. The trial court held the dispositional hearing the following week. At the conclusion of that hearing, the trial court found that the Department had established grounds for terminating respondent's parental rights to all three children and ordered his rights terminated at the initial disposition. On this record, the trial court had the authority to order termination at the initial disposition.

Once a trial court takes jurisdiction over a child, the trial court must conduct a permanency planning hearing within 30 days after a "judicial determination that reasonable efforts to reunite the child and family are not required." MCL 712A.19a(2). The Legislature further required that reasonable efforts to reunite the child be made in "all cases" unless an exception applies. See MCL 712A.19a(2); see also *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). The exceptions are:

(a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided [under MCL 722.638(1) or (2)].

(b) The parent has been convicted of 1 or more of the following:

(*i*) Murder of another child of the parent.

(*ii*) Voluntary manslaughter of another child of the parent.

(*iii*) Aiding or abetting in the murder of another child of the parent or voluntary manslaughter of another child of the parent, the attempted murder of the child or another child of the parent, or the conspiracy or solicitation to commit the murder of the child or another child of the parent.

(*iv*) A felony assault that results in serious bodily injury to the child or another child of the parent.

(c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights.

(d) The parent is required by court order to register under the sex offenders registration act. [MCL 712A.19a(2)(a) to (d).]

Courts have imprecisely referred to these exceptions as involving aggravated circumstances, see *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), even though that phrase only appears in the first exception. Compare MCL 712A.19a(2)(a), with MCL 712A.19a(2)(b) to (d). Nevertheless, the Legislature identified the circumstances under which the Department has no obligation to make reasonable efforts to reunify the child; and this Court has held that a trial court must order the Department to make reasonable efforts to reunify the child with his or her family at the initial disposition unless one of the exceptions applies. See *In re Simonetta*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357909); slip op at 3-6.

The Department's allegations implicated two exceptions. The Department alleged that respondent sexually assaulted INW on multiple occasions, which implicated the exception for aggravated circumstances stated under MCL 712A.19a(2)(a). The Department also alleged that he had his parental rights to another child terminated and stated the concerns that led to that termination. Those allegations implicated the exception stated under MCL 712A.19a(2)(c).

The evidence submitted at the adjudication trial and dispositional hearing demonstrated that the exception stated under MCL 712A.19a(2)(c) did not apply. Testimony and evidence established that the termination of respondent's parental rights to IH involved problems with employment, domestic violence, and housing. The evidence showed that respondent had adequate housing, did not have domestic violence concerns with his most recent partner, and had employment. Moreover, the trial court did not make findings about the previous termination that suggested that it had considered that exception and determined that it did not apply.

By contrast, the trial court made findings that demonstrated beyond reasonable dispute that it determined that the exception stated under MCL 712A.19a(2)(a) applied. After hearing the evidence at the adjudication trial, but before the start of the dispositional hearing, the trial court specifically found that the Department proved by a preponderance of the evidence the allegations in all three petitions. The court clarified that it was referring to the allegations that respondent touched INW inappropriately on more than one occasion. It further explained that it was asserting jurisdiction over GC and GTC, as INW's siblings, for the same reason. The trial court went into more detail in its oral opinion. The court first noted that the Department asked for termination at the initial disposition. The court summarized INW's testimony from the adjudication trial and found that her testimony was compelling, convincing, and credible. Moreover, it specifically characterized its findings as findings that respondent sexually abused INW, which implicated GC and GTC as INW's siblings.

The trial court was presumed to know the law, see *Charles A Murray Trust v Futrell*, 303 Mich App 28, 44; 840 NW2d 775 (2013), so it understood that it could not terminate respondent's parental rights to the children at the initial disposition unless it determined that one of the

exceptions stated under MCL 712A.19a(2) applied. Examined in context, the trial court's statements that it found that the Department proved its allegations that respondent sexually abused INW, coupled with its decision to terminate respondent's parental rights to all three children at the initial disposition, shows that the trial court understood that it had the authority to order termination at the initial disposition under the exception for sexual assault. See MCL 712A.19a(2)(a). For that exception, the Legislature stated that the Department must make reasonable efforts to reunify the child and family unless there is a "judicial determination" that reasonable efforts need not be made. MCL 712A.19a(2). The Legislature further stated that reasonable efforts are not required when there has been a "judicial determination that the parent subjected the child to aggravated circumstances" within the meaning of MCL 722.638(1) or (2). See MCL 712A.19a(2)(a).

Under MCL 722.638(1)(a)(*ii*), the Legislature provided—in relevant part—that an aggravated circumstance included when a parent has abused the child, or the sibling of a child, and the abuse included "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." In this case, the trial court stated that the Department proved the allegations of sexual abuse stated in its petitions by a preponderance of the evidence and specifically found that it amounted to sexual abuse. The trial court's statements and findings were sufficient to establish that respondent engaged in conduct that fell within the conduct described under MCL 722.638(1), and that the children were either the child subjected to the abuse, or siblings of a child subjected to the abuse. Therefore, the trial court made findings that established that the exception stated under MCL 712A.19a(2)(a) applied to each of the children.

Respondent maintains that the trial court erred because the trial court failed to specifically find that there were "aggravated circumstances," or find that the Department had no obligation to make reasonable efforts. In the absence of such specific findings, he argues, the trial court had no authority to order termination at the initial disposition.

The Legislature did not specify detailed procedures for applying MCL 712A.19a(2). Rather, the Legislature referred broadly to a "judicial determination" that an exception applied and—for purposes of applying the exception stated under MCL 712A.19a(2)(a)—it also referred to a "judicial determination" that there were aggravated circumstances. See MCL 712A.19a(2) and MCL 712A.19a(2)(a). Broadly speaking, when one refers to a judicial determination, one is referring to a decision on a disputed matter that was made by a court. See, e.g., *People v Solloway*, 316 Mich App 174, 185; 891 NW2d 255 (2016) (noting that a statute is not vague if its meaning has been clarified by judicial determinations). Moreover, although the better practice might be for the trial court to identify the relevant statutory exception by name or to frame its "judicial determination" by mirroring the statutory language, our Supreme Court has not in the past required trial courts to use "magic words" or formulaic pronouncements when making a determination required by statute. See, e.g., *People v Babcock*, 469 Mich 247, 259 n 13; 666 NW2d 231 (2003). Instead, trial courts are required to make brief, definite, and pertinent findings and conclusions on contested matters. See MCR 3.977(I)(1).

As this Court has explained, a trial court adequately justifies its determination when the record shows that the court was aware of the issues, correctly applied the law, and when a more detailed explanation would not further appellate review:

The Department argues that the Court of Claims did not make sufficient factual findings to justify its determination that the Department's defense was frivolous. Court rules require trial courts to place findings of fact and conclusions of law on the record. Findings of fact are sufficient if they are brief, definite, and pertinent, and it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation. [*Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (quotation marks, citations, and alterations omitted).]

It was evident from the lower court proceedings that the Department sought termination at the initial disposition, and did so in relevant part on the basis of its allegations that respondent sexually abused INW and her siblings were in danger of similar abuse. The trial court's findings demonstrate that it resolved the dispute over the allegations of sexual abuse in the Department's favor. When the findings are coupled with the trial court's determination that the Department established grounds for terminating respondent's parental rights at the initial disposition, it is apparent that the trial court made a judicial determination that the exception stated under MCL 712A.19a(2)(a) applied to the terminations at issue.

Respondent in part relies on two orders by our Supreme Court for the proposition that the trial court must specifically identify the relevant exception or it will be precluded from ordering termination at the initial disposition.

In *In re Simonetta*, 507 Mich 943, 943; 959 NW2d 170 (2021), our Supreme Court ordered a remand to the trial court to order the Department to make reasonable efforts or "articulate a factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required." Notably, the Supreme Court's order suggested that the trial court had not adequately identified the facts that supported its determination, which was consistent with ordering the trial court to "articulate" its factual finding. *Id*. There is no indication that the Supreme Court intended to impose a bright-line rule that all trial courts must specifically state on the record that it finds that the Department proved that a particular exception applied.

*In re Smith-Taylor*, ___ Mich ___, ___; 969 NW2d 61 (Mich, 2022), is even less helpful. In that order, the Supreme Court ordered the Department to answer an application for leave to appeal and address, in relevant part, whether "the record supports a finding that, as to the respondent, '[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances,' MCL 712A.19a(2)(a)" and "whether, absent such a finding, the Department satisfied its obligation to make '[r]easonable efforts to reunify the child and family' under MCL 712A.19a(2) despite its failure to provide the respondent with a case plan." *Id*. The Court's decision to compel the Department to answer those questions does not establish a requirement that trial courts make the judicial determinations required under MCL 712A.19a(2) in any particular way. Moreover, after the Department complied with the order, the Supreme Court reversed. *In re Smith-Taylor*, ___ Mich ___; 971 NW2d 657 (2022) (Docket No. 163725) (entered April 8, 2022). In doing so, the Supreme Court noted that this Court misconstrued the trial court's findings of fact. *Id*. at ___. More specifically, the Supreme Court noted that the trial court determined that there were no aggravating circumstances. *Id*. at ___. The Supreme Court did not reverse because the

trial court failed to articulate its determination in a particular manner or using a specified formula. *Id*. at ___.

Respondent has not demonstrated that the trial court had to make its determinations through formulaic pronouncements or specific citations to the exceptions stated under MCL 712A.19a(2). Rather, the trial court's determinations were sufficient if the record showed that the trial court was aware of the issue concerning the exceptions stated under MCL 712A.19a(2), resolved the dispute, and supported its resolution with adequate factual findings to permit appellate review. See MCR 3.977(I)(1) and (3); *Ford Motor Co*, 313 Mich App at 589. The record adequately established these criteria. The trial court was aware that the Department sought termination at the initial disposition and that the Department justified that request in part on the basis of its allegations that respondent sexually abused INW, which implicated the potential that he might abuse the other children. The trial court plainly understood that the parties disputed the facts underlying the allegations of sexual abuse and resolved the factual dispute in the Department's favor. It then determined that termination at the initial disposition was proper. Taken together, the only logical conclusion is that the trial court determined that respondent subjected INW to the aggravated circumstances identified under MCL 722.638(1) within the meaning of the exception provided by MCL 712A.19a(2), and concluded that the Department had no obligation to make reasonable efforts given the resolution of the factual dispute. Consequently, respondent has not shown that the trial court plainly erred in its application of the law governing the authority to terminate parental rights at the initial determination, and, because the record showed that the trial court followed the statutory criteria, respondent has similarly failed to establish that the trial court's failure to follow the criteria amounted to plain constitutional error. See *In re Utrera*, 281 Mich App at 8-9.

Respondent also asserts that, if this Court concludes that the trial court adequately determined that the exception stated under MCL 712A.19a(2)(a) applied, it nevertheless clearly erred when it made that determination because there was no evidence that respondent sexually penetrated INW, attempted to sexually penetrate her, or assaulted her with the intent to sexually penetrate her. See MCL 722.638(1)(a)(*ii*). The record does not support respondent's assertion.

The Legislature identified the types of abuse that will constitute aggravated circumstances within the meaning of MCL 712A.19a(2)(a). In relevant part, such abuse involves abuse of a child or a sibling of a child that includes "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." MCL 722.638(1)(a)(*ii*). By referring to criminal sexual conduct, the Legislature stated its intent to incorporate the statutes that criminalize sexual conduct. The statutes criminalizing sexual conduct define sexual penetration as any "intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body[.]" MCL 750.520a(r). This Court has held that evidence that permits an inference that the defendant intruded between the victim's labia satisfies the element of penetration. See *People v Lockett*, 295 Mich App 165, 188; 814 NW2d 295 (2012).

INW testified about the first incident in which respondent sexually assaulted her. She stated that she had just gotten out of the shower and was nude. She stated that respondent began rubbing lotion on her, and at first, it seemed normal. Then he began rubbing her butt. Eventually, he moved his hand to her front privates—the private part from which she urinated. He began

rubbing her there too. His hand, she said, no longer had lotion on it. She stated that the rubbing with his hand happened for a while, and he seemed to be enjoying it.

Although INW did not directly state that respondent's hand or fingers penetrated her labia majora, the way that she described the incident permitted an inference that his hand or fingers separated her labia majora. She stated that he rubbed her front genitals for a while and that he smiled and seemed to enjoy it. She also stated that his hand no longer had lotion on it when he rubbed her where she pees. She described the earlier rubbing as normal, but she stated that this rubbing was not like that and she froze. The statement that respondent's hand no longer had lotion, that he rubbed her for some time, that she froze, and that it was no longer normal strongly suggested that he separated the labia. This evidence was sufficient for the trial court to infer that INW was describing sexual penetration. See *id*.; see also MCL 722.638(1)(a)(*ii*).

Even if that were insufficient, INW's testimony about the other incidents permitted an inference that respondent assaulted INW with the intent to penetrate her. INW testified that respondent grabbed her on several occasions and held her while she resisted. He then forcibly rubbed her butt and, on another occasion, her front private part. The evidence that he forcibly restrained a small child while he rubbed her butt and front private part on more than one occasion permitted an inference that he had the intent to penetrate her sexually at some point in the assaults even though he did not carry out his intentions. INW's testimony was sufficient to support a determination that there were aggravated circumstances within the meaning of MCL 722.638(1)(a). We are not left with the definite and firm conviction that the trial court erred to the extent that it found that respondent either did penetrate INW's labia or intended to do so at some point when he assaulted her. See *In re Gonzales/Martinez*, 310 Mich App at 430-431.

The trial court also did not clearly err to the extent that it found that the Department did provide some services to respondent and that he did not benefit from them. The Department presented evidence that it referred respondent to a class on sexual abuse, but he refused to participate in it. It also referred him to a parenting class and a class on domestic violence. Respondent did not participate in those classes because he stated that he had recently completed similar classes. A Department caseworker testified, however, that she felt respondent would have benefited from retaking that class. She also testified that she referred respondent to counseling, which he was doing, but she felt he was not benefiting from it. She explained that respondent had focused the counseling on his feelings about what was happening and was not addressing the problem of sexual abuse.

This testimony established that the Department provided respondent with relevant services and that he chose not to participate in some services and did not benefit from others in a way that would rectify the conditions that led to the adjudication. A parent's failure to benefit from a service is evidence that the parent will again endanger children left in his or her care. *In re Trejo*, 462 Mich 341, 346 n 3; 612 NW2d 407 (2000). The trial court did not clearly err when it found that the Department provided respondent with some services, which were reasonable, that he did not benefit from them, and that his failure to benefit from them was evidence that he would endanger the children by engaging in behaviors that the services were intended to correct. See *In re Gonzales/Martinez*, 310 Mich App at 430-431.

Respondent also argues that the trial court clearly erred when it found that the Department had established grounds for terminating his parental rights under MCL 712A.19b(3)(i) because the undisputed evidence showed that he rectified the conditions that led to the termination of his parental rights to Holt. The trial court did not, however, find that the Department proved that ground for termination. The trial court stated that it found that the Department had proved by clear and convincing evidence grounds for terminating respondent's parental rights to the children under MCL 712A.19b(3)(b)(*i*) and (j). Because the trial court did not terminate respondent's parental rights under MCL 712A.19b(3)(i), there is no error involving that ground to review.

Respondent has not identified any errors with the trial court's findings or determination that the Department established grounds to terminate his parental rights to the children under MCL 712A.19b(3)(b)(*i*). Therefore, we need not address whether the trial court erred in any respect when it terminated respondent's parental rights on that ground. Additionally, because the Department only had to establish one ground for termination, we need not address his claims of error involving the trial court's determination that the Department established grounds for terminating his parental rights under MCL 712A.19b(j). See *In re Trejo*, 462 Mich at 360.

Respondent has not shown that the trial court plainly erred when it applied the law and determined that the Department could properly seek termination at the initial disposition. He has also not shown that the trial court clearly erred when it determined that the Department had established at least one statutory ground for terminating his parental rights to each of the children.

## II. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent also argues that the trial court clearly erred when it found that termination was in the best interests of each child. This Court reviews the trial court's factual findings underlying its application of the law for clear error. See *In re Gonzales/Martinez*, 310 Mich App at 430. A finding is clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. *Id*. at 430-431.

### B. ANALYSIS

Once the trial court found that the Department had established one or more grounds for termination, the trial court had to terminate respondent's parental rights to the children if it found that termination was in each child's best interests. See MCL 712A.19b(5). The focus is on the children at the best-interest stage of the proceedings—not the parent. See *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). When considering the children's best interests, the trial court had to weigh all the evidence and consider a variety of factors:

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history

with the child, the children's well-being while in care, and the possibility of adoption.  [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and footnotes omitted).]

The trial court also had to independently consider the best interests of each child.  See *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012).  It was not, however, required to make redundant factual findings.  *In re White*, 303 Mich App at 716.  It only had to address separately significant differences between the children's best interests, if there were any.  *Id*. at 715.

The trial court identified various factors that were important to the best-interest determinations and identified whether the evidence concerning each factor demonstrated that termination was in the best interests of the child.  The trial court found that INW had no bond with respondent—or, if she did have a bond, it was a trauma bond that had to be broken.  The court also noted that respondent did not have parenting time with INW since 2018, and had not consistently paid support.  The court stated that the evidence showed that INW needed a stable home; she needed to know that respondent was not going to be constantly filing motions to change parenting time or custody, and would not be subjected to sexual abuse.  The trial court further found that respondent had refused to take a class on sexual abuse and had not participated in counseling that was child-centered.  As a result, he had not made any progress on the problem that led to the adjudication.  On this record, the trial court did not clearly err when it found that termination was in INW's best interests.  See *In re Gonzales/Martinez*, 310 Mich App at 430-431.

The same evidence also tended to support a finding that it was in the best interests of GC or GTC to terminate respondent's parental rights to them.  The evidence that respondent had not made any progress with the problem of sexual abuse tended to favor termination because it suggested that respondent might harm the younger children as well.  That danger was particularly strong for GC, who was about the same age as INW when respondent began abusing her.  Although GTC was younger and male, the evidence that respondent refused to take responsibility for his actions or participate in services designed to address those behaviors implicated his ability to safely parent even GTC.  The trial court did not clearly err when it found that those factors favored termination.  See *id*.

The trial court also stated that respondent had not had parenting time with any of the children since the Department filed its petitions because the Department had sought termination at the initial disposition, which weighed in favor of termination under the best-interest determination.  And it found that GC had a weak bond with respondent.  The court acknowledged that it was unknown whether respondent had a bond with GTC.  The court thought it telling, however, that respondent tried to entice GC's mother into testifying on his behalf by offering to stop fighting her attempts to regain custody of GC.  The court felt that that evidence gave it "serious concerns regarding general parenting ability" because respondent was willing to "barter with the child's custody situation."  The trial court also cited the evidence that respondent used the courts to pull GC from her school and away from her friends midyear as part of his custody battle with GC's mother.  The court opined that respondent did that to assert control rather than out of concern for GC's best interests.  This evidence, the court explained, showed that the children needed stability that respondent was not willing to let them have.  The court further recognized that GC and GTC were young and needed stability sooner rather than later.  The court stated that they should not "be

required to wait for the parent to rectify [the] conditions" that caused them to come into the court's jurisdiction. Because respondent refused to accept responsibility, the court felt that the need for permanence and stability favored a finding that termination was in the best interests of GC and GTC as well. On this record, we are not left with the definite and firm conviction that the trial court erred when it made that finding. See *id*.

Respondent has not shown that the trial court clearly erred when it found that termination was in the best interests of all three children.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

Finally, respondent argues that the trial court abused its discretion when it denied his motion for reconsideration or a new trial premised on his assertion that he did not receive effective assistance of counsel. This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. See *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). This Court also reviews for an abuse of discretion a trial court's decision on a motion for a new trial. See *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Corporan*, 282 Mich App at 605-606. However, this Court reviews de novo any questions of law underlying its decision. See *Kelly*, 465 Mich at 34.

### B. ANALYSIS

Respondent had a statutory right to the effective assistance of counsel during the adjudication trial and termination hearing. See MCL 712A.17c(4); MCR 3.915(B)(1)(b). When examining a claim of ineffective assistance of counsel in a termination proceeding, this Court applies by analogy the principles of ineffective assistance of counsel developed under the criminal law. See *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Accordingly, to establish the right to a new trial premised on ineffective assistance of counsel, respondent had to show that "(1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *Id*.

Respondent argued in the trial court—and continues to argue on appeal—that trial counsel's failure to investigate and call various witnesses for his defense fell below an objective standard of reasonableness. Respondent's trial counsel had an obligation to conduct a reasonable investigation to support respondent's defense; counsel had to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted). The failure to conduct an adequate investigation is an omission that falls below an objective standard of reasonableness under prevailing professional norms. *Id*. at 52-53.

In the affidavit that he submitted to the trial court in support of his motion, respondent asserted that trial counsel did not call witnesses that he would have liked to have called. He did not, however, name those witnesses or present evidence that the witnesses were ready and willing to testify on his behalf. He also did not present any evidence to establish the content of their

proposed testimony beyond stating that the unnamed witnesses would have testified in his favor. On appeal, he states that he could have called his sister and his mother to testify that he was never alone with INW. However, he has not presented an affidavit from either proposed witness that established that she would in fact have testified favorably about him.

Respondent had the burden to establish the factual predicate of his claim that he did not receive the effective assistance of counsel. See *People v Odom*, 327 Mich App 297, 314; 933 NW2d 719 (2019). In the absence of any support for the contention that the witnesses would have testified and would have testified favorably to the defense, this Court cannot conclude that trial counsel's failure to investigate or call the witnesses amounted to ineffective assistance. See *People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994). Without such evidence, respondent cannot establish that the failure to call the witnesses prejudiced his trial. See *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018).

Respondent has not shown that the trial court's decision to deny his motion fell outside the range of principled outcomes. See *Corporan*, 282 Mich App at 605-606.

IV. CONCLUSION

Respondent has not identified any errors in the adjudication or termination hearing that warrant relief.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Christopher M. Murray

-12-